**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOXIN FREE USA, P.O. Box 458 Unionville, CT 06085,<br><br>       Plaintiff,<br><br>   v.<br><br>THE J. M. SMUCKER COMPANY, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219, and AINSWORTH PET NUTRITION, LLC, 18746 Mill St., Meadville, PA 16335,<br><br>       Defendants. | Case No. _____ |

**NOTICE OF REMOVAL**

Defendants The J. M. Smucker Company ("Smucker") and Ainsworth Pet Nutrition, LLC ("Ainsworth"), by filing this Notice of Removal and related papers, remove this lawsuit from the Superior Court of the District of Columbia to this Court under 28 U.S.C. §§ 1332, 1441, and 1446.

**INTRODUCTION**

This case is removable because it satisfies the requirements of the Class Action Fairness Act ("CAFA"). "CAFA only requires that the action be brought under Rule 23 or a statute that *authorizes* class actions to be brought by a person." *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (emphasis in original) (citation omitted). Here, Plaintiff "Toxin Free USA" is bringing this action as a representative action under the District of Columbia Consumer Protection Procedures Act ("CPPA"). *See* **Ex. A**, Compl., ¶ 11 (citation omitted).[1] The D.C. Court of Appeals has explained that the D.C. Council passed the CPPA and authorized "the right to bring

---

[1] Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in the Superior Court action are attached to this Notice as **Exhibit B**.

1

representative suits *within* the framework of Rule 23." *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 989 (D.C. 2015) (emphasis in original). And on March 18, 2020, "Toxin Free" confirmed that it was bringing this action within the framework of Rule 23 when it served a discovery request on Defendants to produce, "[a]ll documents ... Defendant intends on using in connection with its opposition to class certification." **Ex. C**, Rothstein Decl., ¶¶ 4, 15; *id.* at Ex. 1 Request 30, Ex. 3 Request 30. Thus, this case is removable under CAFA because there is complete diversity, the proposed class consists of 100 or more people, and the amount in controversy exceeds $5 million.

In the alternative, this case is also removable under the traditional diversity statute because the parties are diverse, the amount in controversy exceeds $75,000, and this Court should adopt the view taken by other jurisdictions and find that the non-aggregation principle does not apply to representative class actions that are brought under statutes like the CPPA.

In support of removal, Defendants state:

## BACKGROUND AND TIMELINESS

1.  Removal is timely under 28 U.S.C. § 1446(b)(3), because this case became removable on March 18, 2020, when Plaintiff first expressed its clear intent to move for class certification in a discovery request. *See* 28 U.S.C. § 1446(b)(3) ("if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable.") (emphasis added); *Rodriguez v. Boeing Co.*, 2014 WL 3818108 at * 6 (C.D. Cal. Aug. 1, 2014) ("Discovery requests submitted by a plaintiff may also constitute 'other paper' under 28 U.S.C. 1446(b)."); *DeJohn v. AT & T Corp.*, 2011 WL 9105, at *2 (C.D. Cal. Jan. 3, 2011) (holding "all 'formal discovery,' including 'a deposition, interrogatory, or request for admission' meets the definition of 'other paper'" and that the plaintiff's discovery requests served the role of

section 1446(b) "other papers" as they were "pregnant with information indicating the removability of the action."); *Hartford Fire Ins. Co.*, 347 F. Supp. 2d 328, 333 (S.D. Miss. 2004) (removal was timely where service on defendants of plaintiff's discovery requests constituted a receipt by defendants of an "other paper" from which it could first be ascertained that the case was removable); *John Hunter, Inc. v. Great Impressions Apparel, Inc.*, 313 F. Supp. 2d 644, 646 (N.D. Tex. 2002) (discovery requests constitute "other paper"); *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 846 (S.D. W. Va. 2008) (same); *see also* 14C Wright & Miller, *Federal Practice and Procedure*, § 3731 (rev. 4th ed. Aug. 2019) ("The federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope.").

2. On May 14, 2019, Plaintiff "Toxin Free USA"[2] commenced this action against Defendants Smucker and Ainsworth in the Superior Court for the District of Columbia, captioned *Toxin Free USA v. The J.M. Smucker Company and Ainsworth Pet Nutrition, LLC*.[3] It is docketed as Civil Action No. 2019 CA 003192 B. A copy of the Complaint is attached as **Exhibit A**.

3. This is the latest lawsuit filed by Toxin Free, which was formed, in its own words, "with the intent of organizing national boycotts of food companies." **Ex. A**, Compl., ¶ 17. This Connecticut nonprofit has now become a professional plaintiff in the D.C. courts, teaming up with a New York law firm to repeatedly file lawsuits on behalf of the "general public" to enjoin food practices nationwide. The playbook is the same every time: a person from Toxin Free goes to a

---

[2] On information and belief, "Toxin Free USA" is actually "GMO Free USA," which is a professional plaintiff that routinely partners with Plaintiff's counsel in the D.C. courts.

[3] Of note, Plaintiff's counsel filed this case on behalf of "Toxin Free" one month after a federal court in New York dismissed a near identical complaint against the same defendants with a different plaintiff. *See Parks v. Ainsworth Pet Nutrition, LLC*, 773 F. Supp. 3d 241 (S.D.N.Y 2019). That case has since been dismissed again and is reported at 2020 WL 832863.

store in D.C.; buys a product; never uses the product; has the product "tested" (in California); and then files a lawsuit in D.C. Superior Court claiming Toxin Free and the public have been "injured."

4.  In this lawsuit, Toxin Free alleges that Defendants violated the CPPA by engaging in false, deceptive, and misleading merchandising practices because two varieties of Defendants' pet food products state that the products are "natural" and contain "no ... artificial preservatives," yet Toxin Free believes the products contain glyphosate, which Toxin Free says is not natural, and ethoxyquin, which Toxin Free says is an artificial preservative. *See* **Ex. A**, Compl., ¶¶ 3–4, 72–94.

5.  In relevant part, the relief Toxin Free seeks is "an order enjoining [Defendants'] conduct found to be in violation of the DCCPPA, as well as corrective advertising"; and "an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law." *Id*. at Prayer for Relief.

6.  ***Who*** Toxin Free is seeking this relief for, however, was unclear when Toxin Free originally filed the Complaint.

7.  After all, though Toxin Free brought this case "on behalf of itself and the general public of the District of Columbia," *id.*, ¶ 72, Toxin Free made a decision not to make any references to D.C. Superior Court Rule of Civil Procedure 23 (the District of Columbia analog to Rule 23 of the Federal Rules of Civil Procedure) or the pleading requirements thereunder.

8.  That decision was undoubtedly strategic because whether Toxin Free is bringing this case on behalf of a class fundamentally alters the removability analysis in this District.

9.  For example, if Toxin Free is ***not*** bringing a case on behalf of a class then the only basis for removal is "traditional" diversity under 28 U.S.C. § 1332(a). And in a case like this one where a nonprofit plaintiff is suing under the CPPA in a representative action and only seeking injunctive relief, courts in this District, unlike others, have refused to allow traditional diversity

cases to be removed because of the non-aggregation principle. *See e.g.*, *Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 170 (D.D.C. 2017); *Organic Consumers Association v. Handsome Brook Farm Group 2, LLC*, 222 F. Supp. 3d 74, 78–79 (2016).

10. But if Toxin Free *were* bringing claims on behalf of a class, then removal is analyzed under CAFA, and the opposite is true under 28 U.S.C. § 1332(d). As relevant here, the amount-in-controversy requirement under CAFA would be increased to $5 million, and CAFA requires that "the claims of the individual class members shall be *aggregated* to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" 28 U.S.C. § 1332(d)(2), (6) (emphasis added); *Bayol v. Zipcar, Inc.*, 2015 WL 4931756, at *10 (N.D. Cal. Aug. 18, 2015) ("CAFA's aggregation rule applies to the value of injunctive relief.").

11. Even still, because the CPPA is a representative action, the courts in in this District have not allowed CPPA cases to be removed under CAFA so long as the plaintiff does "not bring its case as a class action," and a defendant does "not show[] that any D.C. law or court opinion would require Plaintiff's case be treated as" a class action. *See, e.g.*, *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 65 (D.D.C. 2017). Indeed, even though the D.C. Court of Appeals found that a representative action under the CPPA is essentially a class action, *see Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 988 (D.C. 2015), courts in this district have said that they "cannot simply convert Plaintiff's claim into a class action, capable of attaining jurisdiction under CAFA, when Plaintiff has specifically disclaimed any intention for class certification." *Hackman v. One Brands, LLC*, 2019 WL 1440202, at *5 (D.D.C. Apr. 1, 2019).

12. Based on this authority, Defendants did not remove this case within the original thirty days that it was filed because Toxin Free strategically did not bring this case as a class action

5

and had not yet given an affirmative indication of an intent to seek class certification.[4] After all, under D.C. law, a plaintiff "has the burden of showing that [its] cause of action meets [certain] prerequisites." *Snowder v. D.C.*, 949 A.2d 590, 597 (D.C. 2008) (alteration original).[5] And the absence of these allegations about these prerequisites on the face of the Complaint were an indication that Toxin Free did not intend to pursue class claims—foreclosing removal at the time.

13. Since then, however, it has become clear that Toxin Free intends to bring—and is bringing—this case as a class action on behalf of similarly situated consumers.

14. For one, the Complaint contains numerous references to CPPA provisions authorizing a public interest organization to bring suit on behalf of a class of consumers generally, and to the class of D.C. consumers specifically. *See* **Ex. A**, Compl., ¶¶ 68, 72, 82, 89–91. Moreover, and critically, the Complaint seeks relief for products that Toxin Free undisputedly did not purchase, as the Complaint states that "[d]iscovery may demonstrate that additional … products are within the scope of this Complaint." *Id.*, n.1.

15. Following the guidance of one D.C. Superior Court Judge, this was a preliminary indication that Toxin Free would "have to seek to certify a class under Rule 23 to represent the

---

[4] Defendants considered removing the case under traditional diversity standards because the Supreme Court has stated that the relief requested by multiple plaintiffs may be aggregated "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). But Defendants did not do so given the fact that the courts in this District have said that plaintiffs do not enforce a single right in which they have a common and undivided interest when they seek compliance with an order of injunctive relief. *See, e.g.*, *Breathe DC*, 232 F. Supp. 3d at 168.

[5] D.C.'s Rule 23(a) provides as prerequisites to any class action that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately.

6

interests of the[] individuals" who bought the products Toxin Free did not buy because, "[g]iven the nature of the statutory scheme, the only members of the 'general public' or 'class of consumers' whose interests Plaintiffs could represent in this case necessarily would be those who have purchased or received the other varieties of Defendant's products" that Toxin Free did not purchase—"in other words, members of the public and consumers who have suffered a cognizable injury under the CPPA sufficient to give each of them Article III standing." *Organic Consumers Ass'n v General Mills, Inc.*, 2017 WL 2901210, at *5 (D.C. Super. Apr. 27, 2017). Nonetheless, Defendants did not remove the case at the time because courts in this District had recently said that the question of whether a "'case must be litigated [as a class action] is a merits question'" and not a jurisdictional question in and of itself. *Cf. Hackman*, 2019 WL 1440202, at *5.

16.     The next indication came in the Superior Court's decision denying Defendants' motion to dismiss Toxin Free's Complaint. In the motion to dismiss, Defendants argued, among other things, that Toxin Free lacked standing to sue on behalf of others because the Complaint was not drafted as a class action, but the Superior Court stated that Defendants were "mistaken" in arguing that "'the Complaint says [p]laintiff is only suing on behalf of itself and the general public' and not on behalf of 'consumers.'" **Ex. D**, Order at 5 (quoting Defs.' Mot. to Dismiss at 1).

17.     At this point, Defendants' counsel attempted to clarify the ambiguity of the Complaint with Plaintiff's counsel. On February 3, 2020, Defendants objected to several of Toxin Free's discovery requests by noting that "the class period is not defined in terms of time and/or scope, and is therefore unduly burdensome, oppressive, harassing, and unreasonable." **Ex. C**, Rothstein Decl., ¶¶ 5, 7; *see, e.g.*, *id.* at Ex. 2 Response to Request 1. During a February 28, 2020 meet and confer, Plaintiff's counsel asked whether these objections were a "mistake." *Id.*, ¶ 7. Defendants' counsel responded that it was not a mistake, and the objection was included because

it was not clear from the face of the Complaint whether Plaintiff intended to pursue class claims. *Id.*, ¶¶ 8–9. In response, Plaintiff's counsel told Defendants' counsel that the Complaint was clear. *Id.*, ¶ 10. Defendants' counsel then directly asked Plaintiff's counsel whether Toxin Free intended to pursue class claims. *Id.* ¶ 11. Plaintiff's counsel did not directly respond to that question, and instead repeated that Defendants' counsel should "read the Complaint." *Id.*, ¶ 12. But because the Complaint did not contain the class allegations required under D.C. Rule of Civil Procedure 23 (i.e., numerosity, commonality, predominance, and typicality), and because Plaintiff's counsel had asked whether the class-based objections were a "mistake," Defendants' counsel took that to mean Plaintiff did not intend to pursue class claims. *Id.* ¶ 13.

18. Following the meet and confer, Plaintiff's counsel served amended discovery requests on Defendants on March 18, 2020. *Id.* ¶ 14. Those discovery requests were amended to include, among other things, a request for the production of "[a]ll documents ... Defendant intends on using *in connection with its opposition to class certification (should Defendant intend on opposing class certification).*" *Id.* ¶ 15 (emphasis added); *id.* at Ex. 3 Request 30.

19. It was based on these amended discovery requests that Defendants were able to first understand with reasonable certainty that Plaintiff intended to pursue class claims in this case.

20. Thus, removal is timely under 28 U.S.C. § 1446(b)(3).

## JURISDICTION AND BASIS FOR REMOVAL

21. This Court has subject matter jurisdiction under CAFA, which "only requires that the action be brought under Rule 23 or a statute that *authorizes* class actions to be brought by a person." *In re Katrina Canal Litig. Breaches*, 524 F.3d at 705 (emphasis in original) (citing 28 U.S.C. § 1453(a); 28 U.S.C. § 1332(d)(1)); *see* 28 U.S.C. § 1332(d)(1)(B) ("the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or some similar*

*statute or rule of judicial procedure **authorizing** an action to be brought by 1 or more representative persons as a class action*") (emphasis added).

22. The D.C. Courts have confirmed that the CPPA *authorizes* an action to be brought by 1 or more representatives as a class action. *See Rotunda*, 123 A.3d at 989 (explaining how the D.C. "Council's affirmation of the right to bring representative suits within the framework of Rule 23 would be wholly consistent with what it otherwise did in the 2000 amendments" to the CPPA); *Organic Consumers Ass'n*, 2017 WL 2901210, at *5 ("under *Rotunda's* interpretation of the CPPA, that Plaintiffs will have to seek to certify a class under Rule 23 to represent the interests of these individuals" who bought products plaintiffs did not buy).

23. And Toxin Free has manifested a clear intention to bring a class action by asking how Defendants intend to Defendant against said class action. *See* **Ex. C**, Rothstein Decl., ¶¶ 4, 15; *id.* at Ex. 1 Request 30, Ex. 3 Request 30. Thus, this case falls outside of the ambit of cases that the Courts in this District typically remand because this is not a case where the Court will have to "convert Plaintiff's claim into a class action," or where the "Plaintiff has specifically disclaimed any intention for class certification." *Hackman*, 2019 WL 1440202, at *5. To the contrary, Plaintiff has specifically asked Defendants how they intend to defend against class certification. *See* **Ex. C**, Rothstein Decl., ¶¶ 4, 15; *id.* at Ex. 1 Request 30, Ex. 3 Request 30.

24. This Court has CAFA jurisdiction when (1) there are no fewer than 100 members in the proposed class; (2) there is "minimal diversity," which means that at least one class member (named or unnamed) must be a citizen of a state that is different than the state of citizenship of any defendant; and (3) the case involves an aggregate amount in controversy greater than the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6).

25. The requirements for jurisdiction under CAFA are satisfied here.

26. First, Toxin Free is representing the "general public" in D.C. and there are more than 100 "consumers within the [D]istrict [of Columbia] [who] have purchased [defendants' products] under misrepresentations made by [defendants]." **Ex. A**, Compl. ¶ 89. As of July 1, 2018, the U.S. Census Bureau estimates that the District has a population of 702,455 people.[6] Over the last three years, Defendants have sold a conservative estimated 436,864 units of the specific product identified in the Complaint in the District of Columbia, clearly indicating that the proposed class includes over 100 members. See **Ex. E**, Hodges Decl., ¶ 7.

27. Second, there is complete, if not minimal, diversity. The caption of the Complaint says that Toxin Free's address is P.O. Box 458 Unionville, CT 06085. Further, the Complaint says that Toxin Free USA is "formerly known as GMO Free USA," which shares the same address and, on information and belief, is domiciled in Connecticut. Further, Plaintiff brings this action on behalf of the general public of the District of Columbia. Meanwhile, Smucker was and is a Pennsylvania corporation that maintains its principal place of business and headquarters in Columbus, Ohio. See **Ex. A**, Compl., ¶ 22. Ainsworth was and is a Pennsylvania corporation that maintains its principal place of business and headquarters in Meadville, Pennsylvania. *Id.* ¶ 20. Thus, there is complete diversity and at least minimal diversity.

28. Third, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. When, as here, the complaint does not state the amount in controversy, the defendant may provide an amount in its notice of removal. 28 U.S.C. § 1446(c)(2)(A).

29. The Supreme Court has explained that a "removal notice need only plausibly allege, not detail proof of, the amount in controversy." *Dart Cherokee Basin Operating Co., LLC v.*

---

[6] Community Facts, U.S. Census Bureau, Dist. of Columbia, July 1, 2018, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml?src=bkmk.

*Owens*, 574 U.S. 81, 83 (2014); *see also Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 93 (D.D.C. 2015) ("[T]he defendant need only 'allege the requisite amount plausibly' and need not support the allegation with evidentiary submissions.") (quoting *Dart Cherokee*, 574 U.S. at 83). Thus, Defendants need only provide a plausible allegation based on a reasonable estimate that the amount in controversy exceeds $5,000,000, and need not provide evidentiary submissions. *See Dart Cherokee*, 574 U.S. at 83.

30. Plaintiff seeks injunctive relief in the form of corrective labeling and advertising. *See* **Ex. A**, Compl. at Prayer for Relief. The cost of this injunctive relief is in excess of $11 million.

31. For one, Plaintiff seeks the repackaging of all Rachel ray Nutrish dog and food products. Given Smucker's significant experience in the work and expense that goes into a labeling change, such a change would exceed $5 million based on the following: (1) the loss associated with the inability to use a large amount of existing packaging; (2) the expense of Smucker's outside marketing firms to work the redesign as well as the internal expense sustained by shifting the Smucker marketing and creative teams to work on the redesign; (3) the expense of purchasing new packaging; (4) potential lost sales for out of stock items while awaiting new packaging; (5) removal of in-store materials as well as creating new in-store materials; and, (4) repackaging or otherwise manually covering the claims on current inventory both at Smucker and possibly already in the custody and control of Smucker customers. *See* **Ex. E**, Hodges Decl., ¶ 9(a).

32. Plaintiff also seeks reducing the alleged chemical load in the supply of all Rachel Ray pet foods. Though Smucker denies adding glyphosate or ethoxyquin to the products, even assuming Toxin Free's allegations are true, guaranteeing the reduction of the infinitesimal amount of residue alleged in the complaint from every product, if even possible, would cost far in excess of $5 million as it would require a complete overhaul of Smucker's supply chain and

11

manufacturing process. Indeed, based on Smucker's experience in ingredient procurement and manufacturing processes, the corresponding work and expense that goes into identifying and qualifying new suppliers as well as changing the manufacturing process would include the following: (1) locating suppliers that could assure their ingredients contain absolutely no residual glyphosate or ethoxyquin, if even possible, and, if possible, the price premium associated with suppliers making the guarantee or even locating ingredients to meet the requirement; (2) segregating the supply chain for these ingredients to ensure no potential of cross-contamination with non-conforming ingredients, including, but not limited to new and exclusive lines to bring these particular ingredients into the facility, holding tanks and silos, and shipping containers; and (3) segregating manufacturing lines to ensure no cross-contamination of ingredients between Rachael Ray Nutrish from other product lines, which would likely also include building a completely separate manufacturing line and space for these products. *See id.*, ¶ 9(b).

33. Even more, Plaintiff seeks to institute an "education campaign." The cost of complying with this demand would be in excess of $1 million. Indeed, based on Smucker's experience with the work and expense that goes into a marketing campaign, the costs in this case, could include the following: (1) the cost of print, digital, television, and radio advertising into DC; (2) the cost of Smucker's external marketing firms and internal marketing and creative service functions to work on the materials for the campaign; and (3) the expense of changing all sales materials for the products and educating the sales force on the issue. *See id.*, ¶ 9(c).

34. Moreover, while Plaintiff has purported to disclaim punitive damages and statutory penalties, Plaintiff is expressly seeking attorneys' fees. *See* **Ex. A**, Compl. at Prayer for Relief. Attorneys' fees authorized under the DCCPPA are considered for purposes of calculating the amount in controversy. *See* D.C. Code § 28-3905(k)(2)(B) (authorizing attorneys' fees); *see also*

*Sloan v. Soul Circus, Inc.*, No. CV 15-01389 (RC), 2015 WL 9272838, at *9 (D.D.C. Dec. 18, 2015) ("Attorney fees are part of the amount in controversy if they are provided for by statute or contract." (collecting cases)). This court also routinely rewards attorneys' fees far in excess of statutory penalties under the DCCPPA on policy grounds. *See Williams v. First Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000) ("Given the public policy interests served by the [DC]CPPA . . . we decline to read a 'rule of proportionality' into that statute."). In fact, in a recent case before this Court, Plaintiff's counsel, Kim Richman, has stated he bills at a rate of $700 an hour. *See Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 344, 354 (D.D.C. 2018) (citing Richman Decl.) Class actions such as this one require thousands of hours of work by the plaintiff's attorneys. In 2016 Mr. Richman was class counsel where "[c]lass counsel documented over 7,000 hours on the case, which represented a collective lodestar of $4,715,940.25." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016). And CPPA claims often number in the hundreds of thousands of dollars. *See, e.g.*, *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 18, 20 (D.D.C. 2014); *Williams*, 225 F.3d at 743 (awarding $199,340 in attorneys' fees). Given this history, Defendants conservatively estimate attorneys' fees at $1 million.

35. In the alternative, Defendants believe this Court has jurisdiction under traditional diversity because the parties are diverse and the amount in controversy exceeds $75,000.[7]

---

[7] Defendants maintain that the non-aggregation principle would not apply to the present claim under the CPPA in this posture because this is a case where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest"—namely, the request to enforce a right to enjoin Defendants' practices and force a corrective action, which cannot be divided. *Cf. Snyder*, 394 U.S. at 335. Although the district courts in this District apply the non-aggregation principle to non-class actions, *see supra* n.3, Defendants believe the rationale would apply to class actions like this one. Moreover, and in any event, Defendants are not aware of any decision by the D.C. Circuit Court approving of the approach by the courts in this District, and other federal courts have adopted a different, "desirable" approach. *See, e.g.*, *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) (holding the demonstration of the amount in controversy "may be made from either side's viewpoint (what a judgment would be worth to

## VENUE

36. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the U.S. District Court for the District of Columbia is the federal judicial district embracing the Superior Court of the District of Columbia, where the action was originally filed.

## ADDITIONAL REQUIREMENTS

37. In accordance with 28 U.S.C. § 1441(d), Defendants will promptly file a copy of this Notice of Removal with the Superior Court of the District of Columbia, which will be promptly served on Plaintiff's counsel through the Superior Court's electronic filing system.

38. Smucker and Ainsworth consent to removal of this action to this Court, as evidenced by Defendants' submission of the Notice of Removal.

39. This Notice of Removal is signed pursuant to FRCP 11.  *See* 28 U.S.C. § 1446(a).

40. Plaintiff requests a jury trial.  *See* **Ex. A**, Compl. at Caption.

## CONCLUSION

By this Notice of Removal, Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections they may have in this action.

---

the plaintiff, or what compliance with an injunction would cost the defendant)."); *Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924, 928, 931 (8th Cir. 1965) (stating that cost to defendant of injunctive relief was an alternate basis to determine amount-in-controversy requirement); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 834–36 (E.D. Mich. 1999) (holding that where "Defendants' costs of compliance do[es] not depend upon the size of the class or the identity of its members . . . it is based upon a common and undivided interest and constitutes an integrated claim."); *Crosby v. Am. Online, Inc.*, 967 F. Supp. 257, 264 (N.D. Ohio 1997) ("This court ... looks to [Defendant's] cost of compliance with the Plaintiffs' requested injunction as an alternative means of satisfying the jurisdictional requirement."); *Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1472 (N.D. Ala. 1996) (holding plaintiffs have common interest in declaratory and injunctive relief); *see also* 14AA Wright & Miller, *Federal Practice and Procedure*, § 3703 (4th ed. Aug. 2019) (cost to defendant approach "seems to be the desirable rule, since the purpose of a jurisdictional amount in controversy requirement—to keep trivial cases away from the federal court system—is satisfied when the case is worth a large sum of money to either party")..

Defendants intend no admission of fact, law, or liability by this Notice, and expressly reserve all defenses, motions, and/or pleas.

WHEREFORE, Defendants request that this action be removed from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

Date: April 17, 2020

Respectfully submitted,

By:  /s/ Kevin B. Goldstein
Kevin B. Goldstein (Bar No. 1028729)
Ronald Y. Rothstein (*admission forthcoming*)
Sean H. Suber (*pro hac vice forthcoming*)
Nathan R. Gilbert (*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
KBGoldstein@winston.com
RRothste@winston.com
SSuber@winston.com
NGilbert@winston.com

*Counsel for Defendants*
*The J. M. Smucker Company and*
*Ainsworth Pet Nutrition, LLC*

## **CERTIFICATE OF SERVICE**

I, Kevin B. Goldstein, hereby certify that on April 17, 2020, I caused a copy of the foregoing document to be served on counsel of record for Plaintiff in the above-captioned Action via email and first class mail:

Kim E. Richman
RICHMAN LAW GROUP
8 West 126th Street
New York, New York 10027
Telephone: (718) 705-4579
Facsimile: (718) 228-8522
krichman@richmanlawgroup.com


By:   /s/ Kevin B. Goldstein