# Exhibit A

Filed
D.C. Superior Court
05/14/2019 18:45PM
Clerk of the Court

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| TOXIN FREE USA, P.O. Box 458 Unionville, CT 06085,<br><br>       Plaintiff,<br><br>   v.<br><br>THE J.M. SMUCKER COMPANY, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219, and AINSWORTH PET NUTRITION, LLC, 18746 Mill St., Meadville, PA 16335,<br><br>       Defendants. | Case No. 2019 CA 003192 B<br><br>**COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT**

On behalf of itself and the general public, Plaintiff Toxin Free USA ("Toxin Free USA") brings this action against Defendants THE J.M. SMUCKER COMPANY, its wholly-owned subsidiary AINSWORTH PET NUTRITION, LLC (collectively, "Rachael Ray Nutrish" or "Defendant"), regarding the deceptive labeling, marketing, and sale of Defendant's pet food products that were or are sold under the Rachael Ray Nutrish® brand and marketed as "natural" and containing "no . . . artificial preservatives" (collectively, the "Products"),[1] and alleges the following based upon information, belief, and the investigation of counsel:

**INTRODUCTION**

1.   Due to concerns about health, sustainability, and the increasing use of synthetically

---

[1] Discovery may demonstrate that additional Rachael Ray Nutrish® products are within the scope of this Complaint. Plaintiffs reserve the right to amend this complaint to include additional food items identified through the course of discovery.

1

created chemicals in the production of food, consumers are increasingly considering with how food, both for them and for their animal companions, is grown, processed, and prepared.

2.      Rachael Ray Nutrish knows that consumers seek out and wish to purchase whole, natural foods for their pets that do not contain synthetic chemicals, and that consumers will pay more for foods for their pets that they believe to be natural than they will pay for foods that they do not believe to be natural.

3.      To capture this growing market, Rachael Ray Nutrish advertises and promotes the Products as "natural" and as containing "no . . . artificial preservatives." *See* **Figures 1 & 2**, below.



**Figure 1.**



**Figure 2.**

4.      These claims are false, deceptive, and misleading. The Products at issue are not "natural" or free of artificial preservatives. The Products contain residues of the unnatural biocide glyphosate, as well as residues of the artificial preservative ethoxyquin.

5.      No reasonable consumer, seeing these "natural" and "no . . . artificial preservatives" representations, would expect that the Products contain unnatural biocides and artificial preservatives.

6.      In sum, Rachael Ray Nutrish is deceiving consumers into believing the Products are "natural" and contain "no . . . artificial preservatives" when, in fact, they are not natural and do contain artificial preservatives.

7.      By deceiving consumers about the nature, quality, and/or ingredients of the Products, Rachael Ray Nutrish is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.

8.      Rachael Ray Nutrish's false and misleading representations and omissions violate D.C. Code § 28-3904.

9.      Because Rachael Ray Nutrish's labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature, quality, and ingredients of the Products, Toxin Free USA brings this deceptive advertising case on behalf of itself and the general public, and seeks relief including an injunction to halt Rachael Ray Nutrish's false marketing and sale of the Products.

### JURISDICTION AND VENUE

10.      This Court has personal jurisdiction over the parties in this case. Plaintiff Toxin Free USA (formerly known as GMO Free USA), by filing this Complaint, consents to this Court having personal jurisdiction over it.

11.      Plaintiff Toxin Free USA has members in the District of Columbia.

12.      This Court has personal jurisdiction over Rachael Ray Nutrish pursuant to D.C. Code § 13-423. Rachael Ray Nutrish has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over it because, *inter alia*, Rachael Ray Nutrish is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avails itself of the laws of this District through its marketing and sales of the Products in this District.

13.      This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(C), (k)(1)(D), and (k)(2).

**PARTIES**

14.     Toxin Free USA is a 501(c)(3) non-profit organization whose mission is to harness independent science and agroecology concepts to advocate for clean and healthy food and ecological systems. Toxin Free USA educates consumers about potential hazards of synthetic ingredients, pesticides and biocides, and genetically engineered organisms.

15.     Toxin Free USA performs its work throughout the United States, including in the District of Columbia.

16.     Toxin Free USA was formed in 2012 with the intent of organizing national boycotts of food companies that use genetically modified ingredients and related synthetic herbicides and pesticides in their products and pressuring companies to remove those ingredients or contaminants.

17.     Consequently, Toxin Free USA firmly believes in food transparency. The organization diligently works to promote food and ecological systems that are clean, accessible, and free of contamination. To that end, Toxin Free USA educates consumers, increasing their awareness and knowledge of glyphosate use in agricultural production and its effect on health and the environment, as well as the use and effects of artificial preservatives.

18.     Toxin Free USA's website, publications, public education, research, network building, and mobilization activities provide an important service to consumers and community activists every month.

19.     On February 22, 2019, Toxin Free USA purchased one package of Rachael Ray Nutrish's "Real Chicken & Brown Rice Recipe" Super Premium Food for Cats and one package of "Real Beef, Pea & Brown Rice Recipe" Super Premium Food for Dogs at a Target store located 3100 14th St NW #201, Washington, DC 20010, in order to evaluate their purported qualities as "natural" products containing "no . . . artificial preservatives."

5

20.     At all times mentioned herein, Rachael Ray Nutrish was and is a Pennsylvania corporation that maintains its principal place of business and headquarters in Meadville, Pennsylvania.

21.     Rachael Ray Nutrish is a wholly owned subsidiary of The J.M. Smucker Company.

22.     At all times mentioned herein, The J.M. Smucker Company was and is a Pennsylvania corporation that maintains its principal place of business and headquarters in Columbus, Ohio.

23.     Rachael Ray Nutrish markets and distributes the Products in retail outlets in the District of Columbia and throughout the United States.

24.     Upon information and belief, Rachael Ray Nutrish has caused harm to the general public of the District of Columbia.

25.     Toxin Free USA is acting on behalf of the general public as private attorneys general pursuant to D.C. Code § 28-3905(k)(1). Plaintiff is a non-profit organization pursuant to D.C. Code § 28-3901(a)(14) and a public-interest organization pursuant to D.C. Code § 28-3901(a)(15).

## FACTUAL ALLEGATIONS

26.     American consumers increasingly and consciously seek out natural and healthful food products for themselves and their pets. Once a small niche market, healthful, natural foods are now sold by conventional retailers, and their sales continue to soar.

27.     Consumers value natural foods for themselves and their pets for myriad health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

A. **Rachael Ray Nutrish Cultivates a "Natural" Brand Image for its Pet Food Products.**

28.     Rachael Ray Nutrish knows that consumers seek out and wish to purchase whole, natural foods for their pets that do not contain artificial chemicals, and that consumers will pay more for pet foods that they believe to be natural than they will pay for pet foods that they do not believe to be natural.

29.     Recent national surveys have found that a majority of consumers seek out products with a "natural" label, believing that "natural" means that the products are produced without pesticides or artificial ingredients.[2]

30.     To capture this market, Rachael Ray Nutrish markets its "Super Premium" pet food as "natural" and as containing "no . . . artificial preservatives."

31.     Rachael Ray Nutrish does not qualify these statements with any disclaimer regarding the presence of glyphosate or ethoxyquin.

B. **Rachael Ray Nutrish Presents the Products as "Natural" and as Containing "No . . . Artificial Preservatives."**

32.     Rachael Ray Nutrish labels the Products as "natural" and as containing "no . . . artificial preservatives."

33.     Upon information and belief, Rachael Ray Nutrish has profited enormously from its falsely marketed products and its carefully orchestrated label and image.

34.     Consumers reasonably believe that a product or ingredient represented as "natural" does not contain residues of synthetic chemicals.

---

[2] *See, e.g.*, Jayson L. Lusk, *Consumer Perceptions of Healthy and Natural Food Labels*, 29 (Jan. 15, 2019), https://bit.ly/2Hy06ML (finding that 68.1% more consumers perceive crops "sprayed with synthetic pesticides like glyphosate or chlorpyrifos" to be "unnatural" than "natural," and that 58.8% of consumers understand "natural" to mean "no preservatives"); Consumer Reports National Research Center, *Natural Food Labels Survey* (2015) (finding that 63% of consumers understand a "natural" label to mean that "no toxic pesticides were used").

35.    Consumers reasonably believe that a product or ingredient represented as "natural" does not contain residues of unnatural biocides.

36.    In 2015, the Consumer Reports National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food labeling.[3]

37.    Sixty-three percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used."[4]

38.    Rachael Ray Nutrish knows and intends that when consumers see the product labels or advertisements promising the products are "natural," consumers will understand that to mean that, at the very least, that the products do not contain synthetic chemicals like pesticides and biocides.

### C.    Glyphosate Is Not Natural.

39.    Quantitative testing has revealed that the Products contain glyphosate.

40.    Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup.[5]

41.    Glyphosate is derived from the amino acid glycine.

42.    To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced with a phosphonomethyl group.

43.    Over the past several years, consumers have become increasingly conscious of the potential detrimental health effects of biocides such as glyphosate.

---

[3] Consumer Reports National Research Center, *supra* note 2.
[4] *Id.* at 2.
[5] *See* Shannon Van Hoesen, Study: Monsanto's Glyphosate Most Heavily Used Weed-Killer in History, Environmental Working Group (Feb. 2, 2016), https://www.ewg.org/release/study-monsanto-s-glyphosate-most-heavily-used-weed-killer-history.

**D.    Ethoxyquin is an Artificial Preservative.**

44.    Quantitative testing has revealed that the Products contain residues of ethoxyquin.

45.    Ethoxyquin is a synthetic[6] chemical commonly used as an artificial preservative in pet food.[7]

46.    Over the past several years, consumers have become increasingly conscious of the potential detrimental health effects of artificial preservatives such as ethoxyquin.

47.    Rachael Ray Nutrish is aware of these concerns. In a December 21, 2018 blog post on Rachael Ray Nutrish's website, the company listed ethoxyquin as one of the "5 Most Harmful Ingredients in Cat Food." Rachael Ray Nutrish has since taken down this post. **Figure 3**, below.

---

[6] *See, e.g.*, A.K. Lundebye et. al, *Levels of synthetic antioxidants (ethoxyquin, butylated hydroxytoluene and butylated hydroxyanisole) in fish feed and commercially farmed fish*, Part A, 27:12 Food Additives & Contaminants 1652 (2010).
[7] *See, e.g.*, 21 C.F.R. § 573.380  ("[Ethoxyquin] is intended for use only: (1) As a chemical preservative for retarding oxidation of carotene, xanthophylls, and vitamins A and E in animal feed and fish food and, (2) as an aid in preventing the development of organic peroxides in canned pet food").



# 5 Most Harmful Ingredients in Cat Food

Feeding our furry family members is the single most important thing we do as pet parents. With so many options available, it's hard to know what cat food ingredients are safe and which ones are dangerous. To stay on top of your cat's health, check food labels carefully for these five harmful ingredients before dishing out her next meal.

---

**Meat by-products**

As the name implies, meat by-products are inferior animal parts not meant for human consumption. Meat by-products can be organs, feet, nails and even rotten or cancerous meats. Bottom line—keep meat by-products off your kitty's plate. Always feed cat food (https://nutrish.com/cat) that contains real meat.

**Cornmeal**

Healthy cats require a high-protein diet. Some pet food manufactures use cornmeal as a cheap substitute for more expensive meat options. Cats that eat cornmeal are at a higher risk for allergies, obesity and feline diabetes. Cornmeal also contains melamine, which can cause kidney failure.

**Artificial food coloring**

Don't be fooled by the tempting color of your cat's food. Artificial colorings are known carcinogens. Be on the lookout for any cat food label with the colors Red #40 or Blue #2. These colors are known to give kitties severe allergies.

**Ethoxyquin**

If you see Ethoxyquin (http://www.feedingfideandfluffy.com/is-ethoxyquin-safe-in-pet-food/) in your cat food ingredient list, you might think again. Ethoxyquin is a chemical primarily used to make pesticides and rubber products. Some pet food manufacturers use Ethoxyquin as a preservative to lengthen the shelf life of cat food claiming it is perfectly safe. However, it is considered a carcinogen in humans and its effects on animals has not been well studied.

**Propylene Glycol**

**Figure 3.** Source: https://nutrish.com/blog/post/5-most-harmful-ingredients-in-cat-food.

48.    Indeed, federal regulations now require disclosure of ethoxyquin in pet food.[8]

Rachael Ray Nutrish makes no such disclosure.

---

[8] *Id.*

**E.    Rachael Ray Nutrish's Marketing Is Misleading and Omits Material Facts.**

49.    Rachael Ray Nutrish's conduct in marketing or representing that the Products are "natural" and contain "no . . . artificial preservatives" misleds and/or tends to mislead the public.

50.    D.C. consumers cannot discover the true nature of the Products from Rachael Ray Nutrish's marketing. D.C. consumers cannot discover the true nature of the Products even by visiting Rachael Ray Nutrish's website, which makes no mention of glyphosate or ethoxyquin.

51.    Discovery of the true nature of the content of the Products requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

52.    Rachael Ray Nutrish deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not "natural" and do contain artificial preservatives, because in fact the Products contain the residues of glyphosate and ethoxyquin; and that the Products are not what a reasonable consumer would consider "natural" or free of "artificial preservatives" because they in fact contain the residues of glyphosate and ethoxyquin.

53.    The production process Rachael Ray Nutrish uses for the Products is known only to Rachael Ray Nutrish and its suppliers.

54.    Rachael Ray Nutrish has not disclosed such information to Toxin Free USA or, on information and belief, to D.C. consumers.

55.    Testing reveals the presence of glyphosate and ethoxyquin residues in the Products, but only Rachael Ray Nutrish knows the methods by which its pet food is processed, or what would account for the presence of glyphosate and ethoxyquin residues in its Products.

| Product | Purchase Date | Glyphosate Residue (ppb) | Ethoxyquin Residue (ppb) |
|---|---|---|---|
| "Real Chicken & Brown Rice Recipe" Super Premium Food for Cats | 2/22/19 | 417 | 16 |
| "Real Beef, Pea & Brown Rice Recipe" Super Premium Food for Dogs | 2/22/19 | 175 | 352 |

56.     Rachael Ray Nutrish's concealment tolls the applicable statute of limitations.

57.     To this day, Rachael Ray Nutrish continues to conceal and suppress the true nature, identity, source, and method of production of its Products.

**F.     Rachael Ray Nutrish Knew or Should Have Known That Its Representations Were False.**

58.     Rachael Ray Nutrish holds itself out to the public as a trusted expert in the sourcing and processing of pet food.

59.     Rachael Ray Nutrish knew what representations it made on the labels of the Products. Rachael Ray Nutrish also knew how the pet food was sourced and processed, and therefore knew or should have known that the pet food contains residues of glyphosate, an unnatural biocide, and ethoxyquin, an artificial preservative.

60.     Rachael Ray Nutrish thus knew, or should have known, the facts demonstrating that the Products were mislabeled and falsely advertised.

61.     Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

62.     Rachael Ray Nutrish made the false, misleading, and deceptive representations and omissions intending for consumers to rely upon these representations and omissions in purchasing the Products.

63.     In making the false, misleading, and deceptive representations and omissions at issue, Rachael Ray Nutrish knew and intended that consumers would purchase the Products when consumers would otherwise purchase a competing product.

64.     Consumers are willing to pay more for products that purport to be "natural" and free of artificial preservatives.

65.     In making the false, misleading, and deceptive representations and omissions at issue, Rachael Ray Nutrish also knew and intended that consumers would pay more for "natural" products that are purportedly free of unnatural agents than they would pay for products that are not "natural," furthering Rachael Ray Nutrish's private interest of increasing sales of the Products and decreasing sales of competing products that are truly natural and/or free from artificial preservatives.

66.     Rachael Ray Nutrish knows that consumers prefer natural pet foods and pet foods that do not contain unnatural or potentially dangerous chemicals or their residues. Rachael Ray Nutrish knows that consumers will pay more for "natural" pet foods or may not purchase them at all unless they are "natural" and free from unnatural and potentially dangerous chemicals.

67.     Upon information and belief, Rachael Ray Nutrish has failed to remedy the problem with the Products, thus causing ongoing harm to consumers.

68.     D.C. Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold with the misleading representations.

69.     Plaintiff contends that the Products were sold pursuant to unfair and unconscionable trade practices because the sale of Rachael Ray Nutrish's Product offends public policy and is immoral, unethical, oppressive, unscrupulous, and causes substantial economic injuries to consumers.

70.    Reasonable consumers do not expect the Products, represented and advertised as "natural," and as containing "no . . . artificial preservatives" to contain unnatural chemical residues such as glyphosate or artificial preservative residues such as ethoxyquin. Rachael Ray Nutrish's statements and other representations convey a series of express and implied claims and/or omissions that Rachael Ray Nutrish knows are material to the reasonable consumer in making a purchasing decision, and that Rachael Ray Nutrish intends for consumers to rely upon when choosing whether to purchase the Products and how much to pay for them.

71.    Rachael Ray Nutrish misrepresented the nature, quality, and/or ingredients of the Products and/or failed to disclose the unnatural aspects of the Products and/or the presence of residues of artificial preservatives, which was and is false, misleading, and/or likely to deceive reasonable consumers.

## CAUSE OF ACTION

### VIOLATION OF THE DISTRICT OF COLUMBIA
### CONSUMER PROTECTION PROCEDURES ACT

72.    Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), Toxin Free USA brings this Count against Rachael Ray Nutrish, on behalf of itself and the general public of the District of Columbia, for Rachael Ray Nutrish's violation of DC CPPA, D.C. Code § 28-3901, *et seq*.

73.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs of this Complaint.

74.    Rachael Ray Nutrish has labeled and advertised the Products as "natural" and has otherwise presented an image and marketing materials suggesting that the Products are natural, when in fact the Products contain residues of an unnatural chemical biocide and an artificial preservative.

14

75.     Rachael Ray Nutrish has labeled and advertised the Products as containing "no artificial preservatives" and has otherwise presented an image and marketing materials suggesting that the Products contain no artificial preservatives, when in fact the Products contain residues of an artificial preservative.

76.     Rachael Ray Nutrish's advertising of the Products misrepresents, tends to mislead, and omits facts regarding the source, characteristics, standard, quality, and grade of the Products.

77.     The Products lack the characteristics, ingredients, benefits, standards, qualities, or grades that Rachael Ray Nutrish states and implies in advertisements.

78.     Rachael Ray Nutrish's misstatements, innuendo, and omissions are material and have the tendency to mislead.

79.     Rachael Ray Nutrish knowingly did not sell the Products as advertised.

80.     The facts as alleged above demonstrate that Rachael Ray Nutrish has violated the DC CPPA, D.C. Code § 28-3901 *et seq.* Specifically, Rachael Ray Nutrish has violated D.C. Code § 28-3904, which makes it an unlawful trade practice to:

(a)     represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

(d)     represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e)     misrepresent as to a material fact which has a tendency to mislead; . . .

(f)     fail to state a material fact if such failure tends to mislead;

(f-1)   [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

(h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

81.    The DC CPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

82.    Though Toxin Free USA need not show proof of deception to succeed on its DC CPPA claim, consumers were in fact deceived. Rachael Ray Nutrish knows and should have known that reasonable consumers would believe that the Products are "natural" and contain "no . . . artificial preservatives" as advertised.

83.    Toxin Free USA has a sufficient nexus to D.C. consumers of the Products to adequately represent their interests.

84.    Because Rachael Ray Nutrish misrepresents the characteristics, ingredients, and benefits of the Products; misrepresents the standard, quality, and grade of the Products; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Products; and advertises the Products without the intent to sell the Products as advertised, Rachael Ray Nutrish's marketing of the Products as "Natural Food" violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

85.    Rachael Ray Nutrish is a "person" within the meaning of D.C. Code § 28-3901(a)(1), is a merchant under § 28-3901(a)(3), and provides "goods" within the meaning of § 28-3901(a)(7).

86.    Pursuant to D.C. Code § 28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or

received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

87.    Toxin Free USA is a nonprofit organization pursuant to D.C. Code § 28-3905(k)(1)(C) that on February 22, 2019 purchased Products in order to test or evaluate their qualities.

88.    Rachael Ray Nutrish's conduct violates the DC CPPA regardless of whether "any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904. Pursuant to D.C. Code § 28-3905(k)(1)(A), "[a] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District."

89.    Any consumer has the right to bring an action for redress of Rachael Ray Nutrish's unlawful behavior, *see* D.C. Code § 28-3905(k)(1)(A), and the statute does not limit consumer plaintiffs according to whether they purchased the product at issue. Nevertheless, as alleged in this Complaint, the Rachael Ray Nutrish Products are marketed and sold in the District, *see supra* ¶¶ 20, 24, and consumers within the District have purchased these Products under the misrepresentations made by Rachael Ray Nutrish. Therefore, a variety of purchasing and non-purchasing consumers could bring an action against Rachael Ray Nutrish based on the misrepresentations and omissions listed in this Complaint.

90.    Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

91.    The only limitation on this power of a public interest organization to act on behalf of consumers is that the public interest organization must have "sufficient nexus to the interests

17

involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see supra* ¶¶ 15-19, Plaintiff Toxin Free USA was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. In addition, Plaintiff Toxin Free USA has retained the undersigned competent counsel, with significant experience in litigating under the DC CPPA, to pursue this action.

92.     Toxin Free USA is a public-interest organization pursuant to D.C. Code § 28-3905(k)(1)(D) and brings this action on behalf of consumers who could bring the action under D.C. Code § 28-3905(k)(1)(A).

93.     Via §§ 28-3905(k)(1)(C) and (k)(1)(D)(i), the DC CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by the D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

94.     Toxin Free USA is a "person" within the meaning of D.C. Code § 28-3901(a)(1), and a "non-profit organization" within the meaning of D.C. Code § 28-3901(a)(14).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Toxin Free USA prays for judgment against Rachael Ray Nutrish and requests the following relief:

A.     a declaration that Rachael Ray Nutrish's conduct is in violation of the DC CPPA;

B.     an order enjoining Rachael Ray Nutrish's conduct found to be in violation of the DC CPPA, as well as corrective advertising;

C.     an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law; and

D.     such further relief, including equitable relief, as this Court may deem just and proper.

18

## JURY TRIAL DEMANDED

Plaintiff Toxin Free USA hereby demands a trial by jury.

DATED: May 14, 2019

**RICHMAN LAW GROUP**

By:

Kim E. Richman
krichman@richmanlawgroup.com
8 West 126th Street
New York, New York 10027
Telephone: (718) 878-4707
Facsimile: (212) 687-8292

*Attorneys for Plaintiff*

19