# Exhibit D

**D.C. Superior Court**
**11/06/2019 14:16PM**
**Clerk of the Court**

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| TOXIN FREE USA | : | Case Number: 2019 CA 3192 B |
| v. | : | Judge: Florence Y. Pan |
| THE J.M SMUCKER COMPANY and | : | Next Hearing: November 22, 2019 |
| AINSWORTH PET NUTRITION, LLC | : | |

## ORDER

This matter comes before the Court on consideration of defendants The J.M. Smucker Company and Ainsworth Pet Nutrition, LLC's Motion to Dismiss ("Defs. Mot."), filed on August 26, 2019; plaintiff Toxin Free USA's Opposition ("Pl. Opp."), filed on September 26, 2019; and defendant's Reply ("Defs. Reply"), filed on October 9, 2019. The Court has considered the papers, the relevant law, and the entire record. For the following reasons, defendants' Motion to Dismiss is denied.

## PROCEDURAL HISTORY

On May 14, 2019, plaintiff Toxin Free USA filed a complaint against The J.M. Smucker Company and Ainsworth Pet Nutrition, LLC (collectively, "defendants"), alleging violations of the D.C. Consumer Protection Procedures Act ("CPPA"). *See generally* Compl.

Plaintiff is a non-profit organization "whose mission is to harness independent science and agroecology concepts to advocate for clean and healthy food and ecological systems." *See id.* ¶ 14. According to plaintiff, "[c]onsumers value natural foods for themselves and their pets for myriad . . . reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values." *See id.* ¶ 27. Plaintiff alleges that "a majority of consumers seek out products with a

'natural' label, believing that 'natural' means that the products are produced without pesticides or artificial ingredients." *See id.* ¶ 29 (citing national surveys).

The Complaint alleges that plaintiff bought one package each of defendants' "Real Chicken & Brown Rice Recipe Super Premium Food for Cats" and "Real Beef, Pea & Brown Rice Recipe Super Premium Food for Dogs" (the "Pet Food"), in order to test whether the Pet Food is "natural" and contains "no artificial . . . preservatives" as its packaging indicates. *See id.* ¶ 1, 19. Plaintiff alleges that it performed quantitative testing on the Pet Food that revealed the presence of the pesticide "glyphosate" and residues of the artificial preservative "ethoxyquin." *See id.* ¶¶ 39-40, 44-45. Plaintiff alleges that defendants knew or should have known that the Pet Food contains glyphosate and ethoxyquin. *See id.* ¶ 59. Plaintiff additionally alleges that consumers have purchased these products in reliance on defendants' misrepresentations; that "consumers were in fact deceived" by defendants; and that "[c]onsumers are at risk of real, immediate, and continuing harm" if the products continue to be sold as currently labeled. *See id.* ¶¶ 68, 82, 89. Plaintiff brings various claims under the CPPA based on these allegations. *See id.* ¶ 80.

On August 26, 2019, defendants filed the instant Motion to Dismiss, arguing that: (1) plaintiff lacks standing; (2) plaintiff's claims are preempted by federal law; (3) the Court should dismiss the case under the primary jurisdiction doctrine; and (4) plaintiff's allegations are implausible. *See generally* Defs. Mot. On September 26, 2019, plaintiff filed its Opposition, arguing that: (1) plaintiff has standing under the CPPA's provisions addressing non-profit and public interest organizations; (2) plaintiff's claims do not conflict with federal law; (3) application of the primary jurisdiction doctrine is inappropriate; and (4) plaintiff alleges plausible claims under the CPPA. *See generally* Pl. Opp. Defendant filed its Reply on October 9, 2019.

**APPLICABLE LEGAL STANDARD**

A complaint should be dismissed for failure to state a claim upon which relief can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 (D.C. 1999); Super. Ct. Civ. R. 12(b)(6). When considering a motion to dismiss a complaint for failure to state a claim, the Court must "construe the facts on the face of the complaint in the light most favorable to the non-moving party, and accept as true the allegations in the complaint." *See Fred Ezra Co. v. Pedas*, 682 A.2d 173, 174 (D.C. 1996). A court should not dismiss a complaint merely because it "doubts that a plaintiff will prevail on a claim." *See Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 210 (D.C. 1997).

A pleading must contain a "short and plain statement of the claim showing that the pleading is entitled to relief." *See* Super. Ct. Civ. R. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Plaintiffs who wish to survive a motion to dismiss under Super. Ct. Civ. R. 12(b)(6) must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiffs must "[nudge] their claims across the line from conceivable to plausible"); *Mazza v. Housecraft LLC*, 18 A.3d 786, 791 (D.C. 2011) (holding that *Twombly* and *Iqbal* apply in our jurisdiction because Super. Ct. Civ. R. 8(a) is identical to its federal counterpart). The "plausibility" pleading standard does not require "detailed factual allegations" at the initial litigation stage of filing the complaint, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.*

## ANALYSIS

### I.    Standing

#### A.  Injury In Fact

Plaintiff has standing to bring the instant case.  To have standing, a plaintiff must demonstrate that: "(1) he or she has suffered injury in fact—an actual or imminent, concrete and particularized, invasion of a legally protected interest; (2) the injury is fairly traceable to defendant's challenged actions; and (3) it is likely the injury will be redressed by a favorable decision."  *See Equal Rights Ctr. v. Props. Int'l*, 110 A.3d 599, 603 (D.C. 2015) (internal citations omitted); *see also Grayson v. AT&T Corp.*, 15 A.3d 219, 224 (D.C. 2011) (en banc) ("[E]ven though Congress created the District of Columbia court system under Article I of the Constitution, rather than Article III, this court has followed consistently the constitutional standing requirement embodied in Article III.  Thus, appellants must allege some threatened or actual injury resulting from putatively illegal action.").

Judges on the D.C. Superior Court have repeatedly held that non-profit groups that test the quality of products have standing to bring CPPA claims on behalf of consumers and the general public.  *See, e.g.*, *Organic Consumers Ass'n v. Bigelow Tea Co.,* No. 2017 CA 8375, 2018 D.C. Super. LEXIS 11, at *1-5 (D.C. Super. Ct. Oct. 31, 2018) (Rigsby, J.) (non-profit organization that purchased products for testing purposes had standing to allege that defendant violated the CPPA); *Nat'l Consumers League v. Gerber Prods. Co.*, No. 2014 CA 8202, 2015 D.C. Super. Ct. LEXIS 10, at *14-18 (D.C. Super. Ct. Aug. 5, 2015) (Ross, J.) (same); *Nat'l Consumers League v. Bimbo Bakeries USA*, No. 2013 CA 6548, 2015 D.C. Super. Ct. LEXIS 5, at *11-15 (D.C. Super. Ct. Apr. 2, 2015) (Mott, J.) (same).

As in the foregoing cases, plaintiff here has standing under D.C. Code § 28-3905(k)(1)(D) (hereinafter "Subparagraph D"), and D.C. Code § 28-3905(k)(1)(C) (hereinafter "Subparagraph C"). Subparagraph D allows a "public interest organization" to "bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District" on behalf of the "interests of a consumer or a class of consumers." *See* D.C. Code § 28-3905(k)(1)(D). The provision also requires that the public interest organization have a "sufficient nexus to the interests involved of the consumer." *See id.* Plaintiff meets the definition of a public interest organization because it is a non-profit that educates consumers about clean and healthy foods, and increases consumers' awareness of the kinds of biocides and artificial preservatives allegedly found in defendants' products. *See* Compl. ¶¶ 14-18; D.C. Code § 28-3901(a)(15). Plaintiff's mission, goal, and work regarding food transparency also provide the required nexus. *See* Compl. ¶¶ 17, 18, 83. Finally, plaintiff sufficiently alleges an injury to those consumers who have been or will be deceived by defendants' alleged mislabeling. *See id.* ¶¶ 29, 68, 82, 89. Plaintiff therefore has standing under Subparagraph D.

Defendants argue that plaintiff does not have standing under Subparagraph D because "the Complaint says [p]laintiff is only suing on behalf of itself and the general public" and not on behalf of "consumers." *See* Defs. Reply at 1. To the contrary, the Complaint repeatedly references D.C. consumers and the alleged injuries that plaintiff seeks to remediate on their behalf. *See, e.g.*, Compl. ¶ 89 ("consumers within the district have purchased [defendant's products] under the misrepresentations made by [defendants]"); *id.* ¶ 82 ("consumers were in fact deceived" by defendants); *id.* ¶ 68 ("consumers are at risk of real, immediate, and continuing harm if the [p]roducts continue to be sold"). Defendants are therefore mistaken.

5

Plaintiff also has standing under Subparagraph C, which states a "nonprofit organization may, on behalf of itself or any of its members . . . and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate . . . ." *See* D.C. Code § 28-3905(k)(1)(C). Plaintiff, a non-profit organization, purchased the Pet Food "in order to evaluate [its] purported qualities" and brings this action "on behalf of itself and the general public." *See* Compl. ¶ 19, 72. Plaintiff therefore has standing under Subparagraph C.

Defendants argue that plaintiff cannot satisfy the requirements of Subparagraph C because plaintiff bought the Pet Food for testing purposes and any injury it alleges is therefore "self-inflicted." *See* Defs. Mot. at 7. Defendants do not address the holdings in *Bigelow Tea*, *Bimbo*, and *Gerber*, each of which held that plaintiffs had standing in analogous "tester" cases. *See generally* Defs. Mot; Defs. Reply. Nor do defendants dispute the meaning of Subparagraph C's plain language that a non-profit organization may bring a claim arising from "consumer goods or services that the organization purchased or received in order to test or evaluate." *See* D.C. Code § 28-3905(k)(1)(C).[1]

Defendant instead relies on *Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*, Case No. 17-1431, 2019 U.S. Dist. LEXIS 109812 (D.D.C. July 1, 2019)). *See, e.g.*, Defs. Mot. at 1, 5, 6. There, the court held that the economic injury created by a non-profit's decision to buy a product for testing was insufficient, by itself, to confer standing. *See Beyond Pesticides*, 2019 U.S. Dist.

---

[1]    "[A] testing organization that has not actually been misled may nevertheless have standing based on a violation of its right to truthful information about the goods or services it tests." Yvette M. Alexander, Report on Bill 19-0581, the "Consumer Protection Amendment Act of 2012," at 5 (Nov. 28, 2012) (Alexander Report). Indeed, the 2012 amendments to the CPPA were specifically intended to confer standing for "testers . . . .without running afoul of [the] smattering of decisions denying standing based on based on notions of 'self-inflicted harm' or 'manufactured standing.'"). *See id.* at 4; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 366, 373 (1982) (acknowledging the validity of "tester" standing for statutory injuries arising from the "enforceable right to truthful information").

LEXIS 109812 at *2-3. But the *Beyond Pesticides* court specifically distinguished the local

District of Columbia courts when it found that the plaintiff in that case failed to establish "Article

III standing," despite stating a claim under the CPPA. *See id.* at *4 (citing *Atchison v. District of*

*Columbia*, 585 A.2d 150, 153 for the proposition that "D.C. courts 'enjoy[] flexibility in regard

to [the case or controversy requirement] not possessed by the federal courts.'")). Thus, *Beyond*

*Pesticides* is not persuasive in determining the issue of standing in the instant case.

Finally, defendants argue that plaintiff has failed to plead a sufficiently "particularized"

injury. *See* Defs. Mot. at 9. Defendants essentially argue that just because the Pet Food plaintiff

bought contained glyphosate and ethoxyquin does not mean that the Pet Food purchased by other

consumers will contain these substances. *See id.* at 9, 11. Defendants support this argument

with a pair of cases which hold that an individual plaintiff must plead that the specific products

she purchased are mislabeled, rather than relying on the allegations of third-party organizations

that tested other products. *See id.* at 9, 10 (citing *Gaminde v. Lang Pharma Nutrition, Inc.*, No.

1:18-cv-300, 2019 U.S. Dist. LEXIS 48595, *2 (N.D.N.Y. Mar. 25, 2019) and *Wallace v.*

*ConAgra Foods, Inc.*, 747 F.3d 1025, 1028 (8th Cir. 2014)).

Unlike the plaintiffs in *Gaminde* and *Wallace*, plaintiff here repeatedly alleges that the

"particular packages" it "personally purchased" contain glyphosate and ethoxyquin. *See* Defs.

Mot. at 10; *see generally* Compl. Defendants ask the Court to turn *Gaminde* and *Wallace* on

their heads and require plaintiff to allege not that the samples it actually purchased are

mislabeled, but rather that all of the other products on the market – those it has not tested – are

mislabeled. As plaintiff points out, this argument "ignores the explicit purpose of the [CPPA's]

'tester' standing provision, which allows testing organizations . . . to analyze a *sample* of a

manufacturer's product and bring an on action . . . on behalf of the general public." *See* Pl. Opp.

at 10 (emphasis in original) (internal quotations and citations omitted).  Indeed, it is precisely

because the average consumer lacks the resources and technical expertise to test these products

that the CPPA gives standing to public interest organizations to sue on the general public's

behalf.  The Court therefore finds that Complaint's allegations are sufficiently particular.

### B.  Injunctive Relief

Defendants also argue that plaintiff lacks standing to bring claims for injunctive relief

because the Complaint alleges that only consumers are at risk of future harm, and "not [p]laintiff

itself."  *See* Defs. Mot. at 8.  To support this argument, defendant relies on authority from other

jurisdictions that concern neither the CPPA nor non-profit organizations suing on behalf of

consumers.  *See id.* (citing *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 249

(S.D.N.Y. 2019) (individual plaintiff suing under New York law) and *Cordes v. Boulder Brands*

*United States, Inc.*, No. CV 18-6534 PSG, 2018 U.S. Dist. LEXIS 217534, at *1 (C.D. Cal. Oct.

17, 2018) (individual plaintiff suing under California law)).

One of the available remedies for claims brought under the CPPA is "[a]n injunction

against the use of the unlawful trade practice."  *See* D.C. Code § 28-3905(k)(2).  As the

Honorable Todd E. Edelman explained in *Organic Consumers Ass'n v. General Mills, Inc.*:

> Plaintiffs do not seek injunctive relief based upon possible future
> purchases of Defendant's products; rather, having procured
> standing by the purchase of one such product, they seek injunctive
> relief against practices that they allege to be unlawful under
> the CPPA.  By its explicit terms, the CPPA permits parties to sue
> on behalf of others for violations of the Act, including those related
> to consumer goods and services, *see* D.C. Code §§ 28-
> 3905(k)(1)(B)-(D), and it permits injunctive relief, *see id.* at § 28-
> 3905(k)(2)(D).  Our Court of Appeals has made explicit the
> connection between those provisions, holding in *Grayson* that a
> plaintiff-purchaser had standing to seek an injunction based upon
> past purchases of defendant's phone card product under the
> principle that the actual or threatened injury required by Art. III of

> the Constitution may exist solely by virtue of statutes creating legal
> rights, the invasion of which creates standing.

*Organic Consumers Ass'n v. General Mills, Inc.*, Case No. 2016 CA 6309, 2017 D.C. Super.

LEXIS 4, at *17-18 (D.C. Super. Ct. July 6, 2017) (Edleman, J.). The Court agrees, and finds

that plaintiff may pursue injunctive relief.

## II.        Preemption

Defendant argues that plaintiff's claims are expressly preempted by the Nutrition

Labeling and Education Act ("NLEA"), which was passed in 1990 by Congress to amend the

Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399i. *See* Defs. Mot. at 11.

Section 343-1(a) of the FDCA contains an express preemption provision which provides that "no

State . . . may directly or indirectly establish . . . any requirement for the labeling of food that is

not identical to the requirement[s]" of the FDCA. *See* 21 U.S.C. § 343-1(a); *see also In Re*

*Estate of Couse*, 850 A.2d 304, 308 (D.C. 2004) (noting that one of the three ways in which a

federal statute can preempt state law is by express preemption, "where statutory language reveals

an explicit congressional intent to preempt state law") (internal citations omitted). Defendants

argue that federal law does not require defendants to include glyphosate and ethoxyquin on their

labels. *See* Defs. Mot. at 12.

To the extent that plaintiff asserts that defendants must adhere to standards that differ

from – and conflict with – federal labeling requirements, such claims clearly would be

preempted. But the Court understands plaintiff to be arguing that the labels in question violate

applicable federal regulations as well as the CPPA. *See* Pl. Opp. at 2 (citing 21 U.S.C. §

343(a)(1)). Plaintiff is not seeking to have defendants list glyphosate and ethoxyquin on their

packages. *See* Pl. Opp. at 1-2. Rather, plaintiff claims that it is defendants' representation that

the Pet Food is "natural" and contains "no . . . artificial preservatives" that makes the presence of

9

glyphosate and ethoxyquin unlawful.  *See* Pl. Opp. at 2.  Under the FDCA, food is misbranded if

"its labeling is false or misleading in any particular."  21 U.S.C. § 343(a)(1).  "Because the FDA

has not created a rule for when food products may be labeled 'natural,' courts have found that

plaintiffs' state law claims challenging the use of 'natural' as false and misleading are not

preempted by the FDCA."  *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 181 (E.D.N.Y.

2018) (citing  *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist.

LEXIS 122186, at *5 (E.D.N.Y. Sept. 14, 2015).  Plaintiff's claims are therefore not preempted

by federal law.

## III.    Primary Jurisdiction Doctrine

As an alternative to preemption, defendants ask the Court to exercise its discretion and

dismiss the case under the primary jurisdiction doctrine.  *See* Defs. Mot. at 13.  "The primary

jurisdiction doctrine applies 'whenever enforcement of the claim requires the resolution of issues

which, under a regulatory scheme, have been placed within the special competence of an

administrative body.'"  *Organic Consumers Ass'n v. Pret A Manger (USA) Ltd.*, No. 2018 CA

006750, 2019 D.C. Super. LEXIS 5, at *8-9 (D.C. Super. Ct. Apr. 29, 2019) (Williams, J.)

(quoting *Lawlor v. District of Columbia*, 758 A.2d 964, 973 (D.C. 2000)).  "The doctrine

advances two important policy objectives: greater uniformity of result and the utilization of the

specialized and expert knowledge of the agency."  *Id.* (internal quotations and citations omitted).

Moreover, "[t]he doctrine should be invoked sparingly."  *Id.* (quoting *APCC Servs., Inc. v.

WorldCom, Inc.*, 305 F. Supp. 2d 1, 12-13 (D.D.C. 2001)).

Defendants argue that whether a product that contains glyphosate and ethoxyquin may be

labeled as "natural" or free from artificial preservatives is an issue best left to the competence of

the EPA and FDA.  *See* Defs. Mot. at 13.  Defendants argue that the EPA is currently reviewing

10

the use of glyphosate in farming, and is proposing certain labeling updates.  *See* Def. Mot. at 13-

14.  Defendants also point out that the FDA is in the process of addressing what types of foods

can have the "natural" label.  *See id.* at 14; Def. Reply at 5, Ex. B (FDA letter to Congress, dated

December 19, 2018) ("FDA Letter").

As discussed above in the context of preemption, plaintiff's claims do not concern

whether defendants are required to list glyphosate on its packaging.  The EPA's efforts to update

labeling requirements for glyphosate are therefore irrelevant to the applicability of the primary

jurisdiction doctrine.  With regard to the FDA's efforts to regulate use the term "natural," the

Honorable Yvonne M. Williams addressed an identical argument earlier this year and reasoned

that:

> the Court is not being asked to rule on whether the glyphosate
> levels found in [defendants' products] are acceptable, rather the
> Court is being asked to address "whether a reasonable consumer is
> likely to be deceived by the use of the term 'natural' on foods that
> contain synthetic residues" in violation of the CPPA.  The claims
> brought by [plaintiff] fall directly under the conventional
> experience of the judiciary.  Moreover, any decision related to
> whether [defendants] violated the CPPA will not lead to
> inconsistent rulings related to any FDA guidelines issued on
> acceptable glyphosate levels in food labeled "natural."
> Furthermore, the delay in any comment from the FDA regarding
> its policy on labeling products as "natural" is a significant factor.
> The Court sees no reason to assume that any agency guidance on
> the matter is forthcoming given that the comment period closed in
> 2016, and it is now 2019.  Given these reasons, the Court finds it
> inappropriate to invoke the doctrine of primary jurisdiction.

*Pret A Manger*, 2019 D.C. Super. LEXIS 5, at *10-11.  As we near the end of 2019, the FDA has

not yet issued any guidance on what products may be labeled "natural," despite the agency's

2018 letter to Congress stating that it had planned to take action this year.  *See* FDA Letter.

Given this delay, and the reasons expressed by Judge Williams in *Pret A Manger*, the Court

declines to rely on the primary jurisdiction doctrine.

11

## IV.    Adequacy of the Complaint

Defendants' last argument for dismissal is that the Complaint's allegations are inadequate. *See* Defs. Mot. at 14. Defendants contend that: (1) a "reasonable consumer" would not feel deceived or misled if she found that there were trace amounts of glyphosate and ethoxyquin in a product labeled "natural" and free of "artificial preservatives"; (2) the amount of glyphosate and ethoxyquin plaintiff alleges are in the Pet Food is too small to be considered "material"; (3) the Complaint fails to allege that defendants themselves added glyphosate and ethoxyquin to the Pet Food; and (4) plaintiff fails to sufficiently detail its "quantitative testing" process. *See* Def. Mot. 15-20. The Court rejects each of these contentions.

Plaintiff adequately alleges that a "reasonable consumer" would be deceived or misled by the statement that a product is "natural" when the product in fact contains glyphosate residue. The Complaint cites multiple surveys indicating "that 63% of consumers understand a 'natural' label to mean that no toxic pesticides were used" and that "68.1% more consumers perceive crops sprayed with synthetic pesticides' like glyphosate . . . to be 'unnatural' than 'natural.'" *See* Compl. ¶ 29, n. 2). The same studies support plaintiff's claims that a "reasonable consumer" would be deceived by the presence of the artificial preservative ethoxyquin in a product labeled as "natural" and free of artificial preservatives. *See id.*; *see also Bigelow Tea*, 2018 D.C. Super. LEXIS 11, at *11.[2]

Plaintiff also adequately pleads that defendant's misrepresentations are "material." A misstatement is material under the CPPA "if a significant number of unsophisticated consumers

---

[2]    "[T]he Court is persuaded that Plaintiff has alleged enough facts to advance a plausible claim that consumers could be misled by Defendant's use of terms such as 'Natural' in advertising its products. Specifically, Plaintiff points to a 2015 Consumer Reports of 1,005 adults indicating that 'sixty-three percent of all respondents' said that 'a natural label on packaged and processed foods means that no toxic pesticides were used.' Thus, by representing the tea as being 'natural' when it allegedly contains glyphosate, Defendant may mislead consumers seeking to purchase only 'natural' foods, and Plaintiff has alleged enough facts to survive a motion to dismiss." *Id.*

would find that information important in determining a course of action." *Saucier,* 64 A.3d at

442 (citation omitted).  Defendants argue that the amount of glyphosate and ethoxyquin allegedly

found in the Pet Food is less than the threshold "tolerance" amount proscribed by the FDA.  *See*

Defs. Mot. at 15-16.  Defendants argue that since the presence of these substances in amounts

less than the FDA tolerance levels is not "harmful to pets[,] . . . 'it is not likely to affect

consumers' decisions in purchasing the product and is thus not material.'"  *See id.* at 15-16

(citing  *Parks*, 377 F. Supp. 3d at 248).  Defendants make a similar argument based on the

labeling requirements for use of the term "organic."  *Id.* at 16 (citation omitted).

   "While [defendants] may use FDA regulations for organic products or the prevalence of

glyphosate as evidence to persuade the fact finder at trial of its labeling, it is not persuasive at the

motion to dismiss stage."  *Pret A Manger*, 2019 D.C. Super. LEXIS 5, at *7.  Materiality does

not turn on whether the presence of glyphosate and ethoxyquin in the Pet Food is in fact harmful

to pets.  Rather, the question is whether an "unsophisticated consumer" would consider the

presence of these substances, in any amount, "important in determining a course of action."  *See*

*Saucier*, 64 A.3d at 442.  "The precise wording on the products' labels has the potential to

mislead consumers who reasonably may believe that a food product with the label 'natural' does

not contain any chemical agents."  *Pret A Manger*, 2019 D.C. Super. LEXIS 5, at *7-8.

Accordingly, the Court finds that the Complaint adequately pleads materiality.

   Defendants next argue that the Complaint fails because it is does not allege that

defendants "added" glyphosate and ethoxyquin as ingredients to the Pet Food.  *See* Defs. Mot. at

17-18.  Defendants argue that, while the products they use to make their Pet Food may be

produced with glyphosate and preserved with ethoxyquin "early in the production process,"

plaintiff's failure to allege that they added these substances themselves is fatal to its claims.  *See*

*id.* Regardless of how the substances were added to the Pet Food, the Complaint adequately alleges that defendants "knew or should have known" that the Pet Food contained glyphosate and ethoxyquin, and that the products were mislabeled. *See* Compl. ¶¶ 59, 60.

Finally, defendants argue that the Complaint fails "to allege sufficient information about the 'quantitative testing'" plaintiff allegedly performed on the Pet Food. *See* Defs. Mot. at 19. The very pleading standards that defendants cite to support their argument belie their position. *See, e.g., id.* (citing *Potomac Dev. Corp. v. Dist. Of Columbia*, 28 A.3d 531, 544 (D.C. 2011) ("A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.")). The Complaint specifically alleges that, on February 22, 2019, plaintiff purchased the Pet Food "at a Target Store located at 3100 14h St NW #201, Washington, DC 20010." *See* Compl. ¶ 19. Plaintiff alleges that "[q]uantitative testing" on the Pet Food "reveals the presence of glyphosate and ethoxyquin." *See id.* ¶¶ 39, 44. Plaintiff even provides the precise amounts of glyphosate and ethoxyquin that its testing revealed. *See id.* ¶ 55. These are not "naked assertions devoid of . . . factual enhancement." *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709 (D.C. 2013). Rather, the Complaint provides sufficient "factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

Accordingly, it is this 6th day of November, 2019, hereby

**ORDERED** that defendants' Motion to Dismiss plaintiff's Complaint is **DENIED**.

**SO ORDERED**.

Judge Florence Y. Pan
Superior Court of the District of Columbia

14

Copies to:

Kim Rochman, Esq.
*Counsel for Plaintiff*

Ronald Rothstein, Esq.
*Counsel for Defendants*