# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOXIN FREE USA, P.O. Box 458 Unionville, CT 06085,<br><br>        Plaintiff,<br><br>   v.<br><br>THE J. M. SMUCKER COMPANY, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219, and AINSWORTH PET NUTRITION, LLC, 18746 Mill St., Meadville, PA 16335,<br><br>        Defendants. | Case No. _____ |

**DECLARATION OF ANDREW HODGES IN SUPPORT OF DEFENDANTS THE J. M. SMUCKER COMPANY AND AINSWORTH PET NUTRITION, LLC'S NOTICE OF REMOVAL**

I, Andrew Hodges, declare and state as follows:

1. I am over the age of 18, am competent to testify to the matters contained in this declaration, and set forth the following facts based upon my personal knowledge.

2. I am the Director, Marketing - Dog Food at The J. M. Smucker Company. I have worked with Smucker since March 2019 and have served in my current role since that time.

3. As Director, Marketing Dog Food, my job responsibilities entail marketing our widely distributed dog food brands, including Rachael Ray™ Nutrish®. This includes, but is not limited to, oversight over marketing communication and advertising, packaging, innovation, and sales and promotion strategy.

4. Smucker's outside counsel has provided me with a copy of a Complaint filed in the Superior Court of the District of Columbia (Case No. 2009 CA 003192 B) by Toxin Free USA

1

against Smucker and Smucker's subsidiary, Ainsworth Pet Nutrition, LLC (collectively, "Smucker").

5. In the Complaint, Toxin Free claims Smucker violated Washington D.C.'s consumer protection law by engaging in false, deceptive, and misleading merchandising practices because the packaging of two varieties of Rachael Ray Nutrish's dog and cat food products (owned and produced by Smucker) say the products are "natural" and contain "no ... artificial preservatives," yet Toxin Free believes the products contain glyphosate, which Toxin Free says is not natural, and ethoxyquin, which Toxin Free says is an artificial preservative.

6. In the Complaint, Toxin Free asked the Court to stop Smucker from engaging in "conduct found to be in violation of the DCCPPA, as well as corrective advertising."

7. Smucker does not track the amount of sales specifically into the D.C. market. Further, given the complexity of the distribution chain, Smucker cannot with complete certainty identify the exact amount of sales into the D.C. market. However, using data extrapolated from retailer scan data available for public purchase, Smucker can to a reasonable degree of certainty estimate that at least 253,828 units of the Rachael Ray dry dog food identified in the Complaint and 183,036 units of the Rachael Ray dry cat food identified in the Complaint were sold by retailers into the D.C. market in the past three years.

8. I have reviewed the letter in which Toxin Free made demands to address the concerns raised in its Complaint. Attached as **Exhibit 1**.

9. Reasonable estimates of the cost of complying with Toxin Free's demands, and the bases for these estimates, are included with the description of each of Plaintiff's demands below:

   a. The discontinuation and removal of "natural" and "no artificial preservatives" representations from labeling and marketing of Smucker's Rachael Ray Nutrish pet

food products, or the inclusion of qualifying statements noting the possible presence of glyphosate and ethoxyquin residues. Rachael Ray Nutrish dog and cat foods are distributed nationally, and it would not be practical to change the label for the D.C. market only. This relief would therefore require repackaging of all Rachael Ray Nutrish dog and cat food products distributed in the United States. Smucker estimates the cost of this relief would be far in excess of $5 million. The basis for this estimate is Smucker's significant experience in the work and expense that goes into a labeling change, which, in this case, would include the following: (1) the loss associated with the inability to use a large amount of existing packaging; (2) the expense of Smucker's outside marketing firms to work the redesign as well as the internal expense sustained by shifting the Smucker marketing and creative teams to work on the redesign; (3) the expense of purchasing new packaging; (4) potential lost sales for out of stock items while awaiting new packaging; (5) removal of in-store materials as well as creating new in-store materials; and, (4) repackaging or otherwise manually covering the claims on current inventory both at Smucker and possibly already in the custody and control of Smucker customers.

    b.  The reduction of the total alleged chemical load in the supply chain of all Rachael Ray Nutrish pet food products, including commitments by Smucker to source from suppliers that can guarantee their products (e.g. meals, vegetables, vitamins, and minerals) contain no residual glyphosate or ethoxyquin. Smucker does not add glyphosate or ethoxyquin to Rachael Ray Nutrish products as an ingredient and specifically excludes its meal and vitamin suppliers from doing the same. However, according to the Complaint, the Rachael Ray Nutrish cat food recipe identified contains 417 parts per billion glyphosate residue and 16 parts per billion ethoxyquin residue, and the dog food recipe identified contains 175 parts per billion glyphosate residue and 352 parts per billion ethoxyquin residue. Smucker has not seen any of the "testing"

that supports these findings and Smucker denies that its products contain added glyphosate or ethoxyquin. But assuming Toxin Free's allegations are true, the reduction of this infinitesimal amount of residue on every product, if even possible, would cost far in excess of $5 million as it would require a complete overhaul of Smucker's supply chain and manufacturing process. The basis for this estimate is Smucker's significant experience in ingredient procurement and manufacturing processes and the corresponding work and expense that goes into identifying and qualifying new suppliers as well as changing the manufacturing process, which, in this case, would include the following: (1) locating suppliers that could assure their ingredients contain absolutely no residual glyphosate or ethoxyquin, if even possible, and, if possible, the price premium associated with suppliers making the guarantee or even locating ingredients to meet the requirement; (2) segregating the supply chain for these ingredients to ensure no potential of cross-contamination with non-conforming ingredients, including, but not limited to new and exclusive lines to bring these particular ingredients into the facility, holding tanks and silos, and shipping containers; and (3) segregating manufacturing lines to ensure no cross-contamination of ingredients between Rachael Ray Nutrish from other product lines, which would likely also include building a completely separate manufacturing line and space for these products.

   c. The institution of a public education campaign, including disclosures on the Rachael Ray Nutrish websites, regarding the use of agro-chemical in the food supply. The cost of complying with this demand would be in excess of $1 million depending on the nature of the public education campaign. The basis for this estimate is Smucker's significant experience of the work and expense that goes into a marketing campaign, which, in this case, could include the following: (1) the cost of print, digital, television, and radio advertising into DC; (2) the cost of Smucker's external marketing firms and internal marketing and creative service functions to work on the

5

materials for the campaign; and (3) the expense of changing all sales materials for the products and educating the sales force on the issue.

10. Based on the foregoing, and even though I and my colleagues at Smucker fundamentally disagree with the validity of the allegations in Plaintiff's Complaint, I estimate that the cost of conforming to Toxin Free's demands is in excess of $11 million in total.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: April 17, 2020 in Akron, Ohio

_____
Andrew Hodges

# Exhibit 1

# RICHMAN
## LAW GROUP

8 W. 126th St., New York, NY 10027 / T: 718.705.4579 | F: 718.228.8522
www.RichmanLawGroup.com

**CONFIDENTIAL SETTLEMENT COMMUNICATION
PROTECTED BY FEDERAL RULE OF EVIDENCE 408
AND ALL EQUIVALENT RULES**

February 13, 2020

**VIA EMAIL**
Ronald Y. Rothstein
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
RRothste@winston.com

Re:   *Toxin Free USA v. J.M. Smucker Co., et al.*  and *Parks v. Ainsworth Pet Nutrition*

Dear Mr. Rothstein:

I write to follow up on our discussion of January 29, 2020. My clients, Toxin Free USA and Markeith Parks (collectively, "Plaintiffs"), are willing to explore resolution of their claims regarding the J.M. Smucker Company and Ainsworth Pet Nutrition (collectively "Rachael Ray Nutrish").[1] As discussed during our January 29 call, Plaintiffs propose setting a date for mediation with an eye toward global resolution.

As you know, the gravamen of Plaintiffs' claims in the above-referenced matters is that Rachael Ray Nutrish deceptively markets certain pet food products ("the Products") as "natural" and containing "no artificial preservatives," despite the fact that the Products contain the synthetic biocide glyphosate and the synthetic preservative ethoxyquin.

Any settlement would need to include meaningful change in Rachael Ray Nutrish's practices. We believe that such change is also in the best interest of Rachael Ray Nutrish, which holds its Products out to consumers as a trusted brand of "natural" pet food and would therefore benefit from providing products that more closely align with consumer expectations. Specifically, Plaintiffs propose the following forms of relief:

1.   <u>Injunctive-type Relief.</u>  Resolutions acceptable to Plaintiffs would include a combination of the following injunctive remedies:

---

[1] I also represent Linda Pickell, Heather Wells, and Jen Schlee (collectively with Plaintiff Parks, the "Consumer Plaintiffs"), residents of Florida and California who gave Rachael Ray Nutrish notice of similar claims under the respective laws of their states via letters on September 27, 2019. Though these consumers have not yet filed suit, for the sake of efficiency, I hope that their claims can be resolved at this time as well.

# RICHMAN
## LAW GROUP

- Discontinuation and removal of the "natural" and "no artificial preservatives" representations from labeling and marketing of the Products, including Rachael Ray Nutrish's website, or inclusion of qualifying statements noting the possible presence of glyphosate and ethoxyquin residues;

- Reduction of the total chemical load in Rachael Ray Nutrish's supply chain, including but not limited to, commitments by Rachael Ray Nutrish to source from grain suppliers that do not apply glyphosate as a desiccant and to source from fish meal suppliers that do not use ethoxyquin as a preservative;

- Institution of a public education campaign, including disclosures on Rachael Ray Nutrish's websites, regarding the use of agro-chemicals in the food supply.[2]

2. <u>Monetary Relief: Class Settlement.</u>  Resolution acceptable to the Consumer Plaintiffs would also include a class settlement fund, equaling a percentage of Rachael Ray Nutrish's total sales of the Products during the class period, to include costs of notice and administration expenses. Class members would be able to claim reimbursement from the fund for their purchases of the Products. Reasonable attorneys' fees and an incentive award for Plaintiff Parks would also be included.

3. <u>Monetary Relief: Individual Settlement & Public Education Fund.</u>  If class settlement is not feasible, Plaintiffs are willing to entertain individual settlements, if meaningful change to Rachael Ray Nutrish can be achieved.

   Plaintiffs propose a settlement amount of $275,000, inclusive of fees and costs, to cover the individual settlements for the Consumer Plaintiffs, as well as the establishment of an educational fund, to be controlled by Plaintiff Toxin Free USA and/or a mutually agreed-upon non-profit, to achieve some of the goals outlined in the injunctive-type options described above.

My clients continue to have full confidence in their allegations and if our conversations become unproductive, Plaintiffs intend to continue pursuing their respective claims in litigation. Please let me know by close of business on February 28, 2020 whether your clients are amenable to engaging in good-faith settlement negotiations, including with the assistance of a mutually agreeable mediator, on the terms proposed above or similar terms.

I look forward to engaging in productive discussion of how the parties can work together to resolve this matter in the interest of consumers and their pets. Please do not hesitate to reach out to me directly.

---

[2] Plaintiffs would expect such disclosure to be similar to what other well-respected brands have done to increase transparency and consumer education. *See, e.g.*, Bob's Red Mill, *Glyphosate, Inside the Mill blog* https://www.bobsredmill.com/blog/healthy-living/glyphosate/.



Very truly yours,

_____

Kim E. Richman
Richman Law Group
8 W. 126th Street
New York, NY 10027
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com